FALLS COUNTY v. J. W. DE LANEY.

No. 6370.

1. **County School Lands — Pre-emption.**—Against one entering upon county school lands knowing that the lands were leased for a term of years, and claiming possession in right of pre-emption, *held:* If section 6 of article 7 of the Constitution was intended to apply to persons who might thereafter enter upon school lands it should be limited so as to include only such parties as should make settlement in good faith.

2. **Same—Power to Sell.**—It is contemplated by the Constitution, in section 6, article 7, that the counties should have the power to derive a revenue from their lands by lease, without selling them. It would be inconsistent with this right to allow any interference with the possession of the county by the entry of any one, although claiming the right of pre-emption, when the county should offer the lands for sale.

3. **Same.**—The county desiring to raise revenue for the public schools by leasing its school lands can regain possession against an intruder upon the land, even though claiming the right, by reason of his occupancy, to buy.

APPEAL from Wichita. Tried below before Hon. P. M. Cline.

The opinion states the case.

*Arnold & Glassgow* and *Rector, Thomson & Rector*, for appellant.—By the Constitution of 1876 actual settlers on county school lands were to be protected in a preference right of purchase only when the lands were offered for sale, but no one was to be protected in settling upon said lands when the counties owning them did not wish to sell, and in thus depriving the counties of the control and management of their land. Const., art. 7, sec. 6; Rev. Stats., arts. 4335, 4336, 4337; Acts 1879, p. 150; Rockwall Co. v. Kaufman Co., 69 Texas, 172; Const., art. 1, sec. 16; Const. U. S., art. 1, sec. 10; Perkins v. Sayers, 60 Texas, 63.

GAINES, ASSOCIATE JUSTICE.—Falls County is the owner of certain lands situate in the county of Archer granted to it for public school purposes. These lands were in 1883 leased for a term of years, but in March, 1885, the lease was forfeited by the failure of the lessees to pay the annual rent in advance as provided by the terms of the contract. The lands were then put upon the market for lease, and in November of the same year they were again let to a firm known as Keen & Files. The appellee testified that in September previous to the latter lease he learned that the former lessees had forfeited their rights, and having taken legal advice he moved upon the lands and improved them with a view to acquire one hundred and sixty acres by purchase as an actual settler whenever they should be put on the market for sale. He also testified as follows: "I heard that Keen & Files claimed to have a lease on the land at the time I went on the land or were endeavoring to get a lease on said land." The appellee having refused to yield possession, and the county being unable to put its lessees in possession, brought this suit to recover the land. The

case was tried by the court without a jury and judgment given for the defendant.

The assignments of error raise several important questions which we do not think it necessary to decide. Whether section 6 of article 7 of the Constitution of 1876 was intended to apply to actual settlers then upon the school lands of the respective counties only, or both to this class. and those who might thereafter occupy them, and to what extent the State may lawfully limit the control of the counties over their school lands, are questions of moment, but their determination is not essential. to the disposition of the present case.

We are of opinion that if the section above cited should be construed. to embrace persons who might thereafter settle upon the county school lands it should be held to include only such as should make the settlement in good faith. The "lands and the proceeds thereof when sold shall be held by said counties alone as a trust for the benefit of public. schools therein," is one provision of the section, and as we construe the words "each county may sell or dispose of its lands in whole or in part," we think it was intended merely to confer the power to dispose of the lands and not to make it the duty of the counties to sell them. We are. therefore of opinion that it was contemplated that the counties should have the power to derive a revenue from their lands by lease if such a. disposition should be deemed best for the interests of the public schools.

It is inconsistent with this right, after the county has once leased its. lands or otherwise indicated its policy to lease and not to sell them, to permit settlers to interfere with their management by occupying any part of them. When a county has placed its lands upon the market for sale the exercise of a right of pre-emption by a settler already occupying a part entails no loss and works no serious hardship upon the county. But to permit a settler to occupy lands held for lease and not offered for sale is practically to place it in the power of persons having no title to the property to deprive the counties of its use. This we think was not intended. The words "other revenue" in the last sentence of the section clearly indicate that it was contemplated that the counties might derive a revenue from the lands without selling them. The claim here set up by appellee is inconsistent with this right of the counties.

The judgment below should have been for the appellant. There being no controversy as to the facts it is accordingly reversed and so rendered.

*Reversed and rendered.*

Delivered April 9, 1889.