ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

April 8, 2008

The Honorable Homero Ramirez
Webb County Attorney
Post Office Box 420268
Laredo, Texas 78042-0268

Opinion No. GA-0616

Re: Whether a county and school districts in the county may jointly develop or sell rights to the natural resources located on county school lands (RQ-0636-GA)

Dear Mr. Ramirez:

You ask whether a county and school districts in the county may jointly develop or sell rights to the natural resources and minerals located on county school lands, sharing expenses incurred and revenue realized.[1] If so, you ask whether they may jointly create a local government corporation or other association for that purpose. Request Letter, *supra* note 1, at 1. You do not ask about a specific plan and do not elaborate about the joint development and expenses you envision. As your question is general, we will confine our analysis accordingly to general principles concerning county school land.

Your question concerns lands the state has given to counties to hold in trust for the benefit of the counties' public schools. Article VII, section 6 of the Texas Constitution governs a county's management and disposition of its public school land:

> All lands heretofore, or hereafter granted to the several counties of this State for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties . . . . Each county may sell or dispose of its lands in whole or in part, in manner to be provided by the Commissioners Court of the county. *Said lands, and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein*; said proceeds to be invested in [certain] bonds . . . , or in such other securities, and under such restrictions as may be prescribed by law; and the counties shall be

---

[1]*See* Letter from Honorable Homero Ramirez, Webb County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Oct. 10, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

responsible for all investments; the interest thereon, and other revenue, except the principal shall be [the] available fund.

TEX. CONST. art. VII, § 6 (emphasis added).

The fund for proceeds held in trust and the "available fund" mentioned in this provision are commonly known respectively as the "county permanent school fund" and the "county available school fund." *See* TEX. EDUC. CODE ANN. § 45.113(c) (Vernon Supp. 2007). The corpus of the county permanent school fund includes the proceeds from any sale or other disposition of county school lands, held in an irrevocable trust in perpetuity for the benefit of the county's public schools. *Id.* § 45.113(a)(2), (c). The income from the trust constitutes a portion of the county available school fund that may be distributed according to law. *Id.* § 45.113(c).[2]

A county's constitutional duty to hold the lands as trustee is reflected in the county commissioners court's statutory responsibility to "provide for the protection, preservation, and disposition of lands granted to the county for educational purposes." TEX. LOC. GOV'T CODE ANN. § 263.003(a) (Vernon 2005). The commissioners court's powers to manage the land under trust allow the court to lease the surface of such lands for the benefit of the county's public schools. *See Falls County v. Delaney*, 11 S.W. 492, 492 (Tex. 1889). A commissioners court also may sell a mineral interest in county school lands. *Ehlinger v. Clark*, 8 S.W.2d 666, 670–72 (Tex. 1928) (holding that the county could grant an oil and gas lease for a royalty, in part because "there was no authority in law for the county [itself] to enter upon the costly experiment of exploring for oil on its school lands").

A county commissioners court and a school district board of trustees are limited to the powers expressly granted to them by the constitution or by statute or necessarily implied from such grants. *See Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948) (concerning county authority); *Tex. Roofing Co. v. Whiteside*, 385 S.W.2d 699, 701 (Tex. Civ. App.—Amarillo 1964, writ ref'd n.r.e.) (concerning school district authority). Neither article VII, section 6 nor any statute of which we are aware expressly or implicitly authorizes a county and its school districts to "jointly develop or sell" rights to natural resources and minerals in county school lands. To the contrary, article VII, section 6 and related statutes prohibit the joint arrangement that your questions seem to suggest. *See* Request Letter, *supra* note 1, at 1. The arrangement you first describe, whereby the county and the school districts "share the expenses incurred and revenue realized from such [a] venture," *id.*, indicates that a joint venture is contemplated. *See id.* A joint venture has "four elements: a community of interest in the venture; *an agreement to share profits; an agreement to share losses; and, a mutual right of control or management of the enterprise.*" *Ayco Dev. Corp. v. G.E.T. Serv. Co.*, 616 S.W.2d 184, 186 (Tex. 1981) (emphasis added). A joint venture to develop county school

---

[2]Former chapter 17, subchapter E contains similar provisions governing the county's duties with respect to county school land and the proceeds of sales, rentals, and leases. *See* TEX. EDUC. CODE ANN. tit. 2 app. at 601–02 (Vernon 2006) (former Education Code §§ 17.81–.83). Chapter 17 was repealed in 1995, but continued in effect for school districts choosing to continue operating under its provisions. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 260, § 58(a)(1), 1995 Tex. Gen. Laws 2207, 2498; TEX. EDUC. CODE ANN. § 11.301 (Vernon 2006).

land resources would necessarily require the county to delegate a portion of its exclusive management authority under article VII, section 6 to the school districts in the county.

The alternative proposal described in your second question also suggests a delegation of authority by the county. The proposal that the county and the school districts establish a separate corporation or association to develop or sell natural resources and minerals from county school land appears to contemplate that the commissioners court would cede its constitutional authority, in whole or in part, to the corporation or association. Request Letter, *supra* note 1, at 1.

The constitution, however, requires the county "alone" to hold the lands and proceeds in trust. TEX. CONST. art. VII, § 6 (stating that "Said lands, and the proceeds thereof, when sold, shall be *held* by said counties *alone* as a trust for the benefit of public schools therein"). Reflecting this constitutional mandate, the Education Code makes the members of the county's commissioners court the "sole trustees" of the trust established for the permanent school fund. TEX. EDUC. CODE ANN. § 45.113(b) (Vernon Supp. 2007). And not only are the members of the commissioners court the sole trustees of the land and the permanent school fund, they may not delegate their authority and responsibility under article VII, section 6, as a long line of cases establishes. *See, e.g., Williams v. Pure Oil Co.*, 78 S.W.2d 929, 931 (Tex. 1935); *Potter County v. C. C. Slaughter Cattle Co.*, 254 S.W. 775, 777–78 (Tex. Comm'n App. 1923, judgm't adopted); *Logan v. Stephens County*, 83 S.W. 365, 368 (Tex. 1904); *Gano v. Palo Pinto County*, 8 S.W. 634, 636 (Tex. 1888). Accordingly, this office has previously advised that a county may not delegate its article VII, section 6 responsibilities to the school districts in the county, relying on article VII, section 6 and the reasoning from the above–referenced cases. *See* Tex. Att'y Gen. Op. No. JC-0399 (2001) at 5. The same principles would apply here, whether the county shares its constitutional authority with the school districts or cedes its authority to a separate corporation or association. Any arrangement to "jointly develop" county school lands in which the commissioners court shares or cedes its authority as sole trustee under article VII, section 6 would be tantamount to an unconstitutional delegation.

Additionally, article VII, section 6 not only prohibits a county from delegating its trustee authority, it also would not allow the county or the schools to "share the expenses incurred and revenue realized." *See* Request Letter, *supra* note 1, at 1. The sale of a mineral interest is a sale of a real property interest. *Ehlinger*, 8 S.W.2d at 670. The proceeds of such a sale must be placed in the permanent school fund. *See* TEX. CONST. art. VII, § 6. A county may not recoup its expenses incurred in the performance of its duties under that constitutional provision from proceeds intended for the permanent school fund. *Dallas County v. Club Land & Cattle Co.*, 66 S.W. 294, 296–97 (Tex. 1902). And school districts are constrained in the use of funds derived from the county available fund. *See* TEX. EDUC. CODE ANN. § 45.105(a)–(b) (Vernon 2006) (limiting the use of "state and county available funds" to teacher and superintendent salary purposes).

You observe that under the Texas Trust Act (the "Act"), a trustee may receive compensation and reimbursement from the trust. *See* Request Letter, *supra* note 1, at 3–4 (citing TEX. PROP. CODE ANN. §§ 114.061(a), .063(a) (Vernon 2007)). You also note that an attorney general opinion has applied a provision of the Act to a permanent school fund. *See id.* at 3 (citing Tex. Att'y Gen. Op. No. M-1104 (1972)). This office has subsequently cautioned, however, that the Act does not apply

to the county as trustee to the extent such provisions would conflict with the county's duties under article VII, section 6. *See* Tex. Att'y Gen. Op. No. JC-0399 (2001) at 5. In 1902, the supreme court determined that while a county is a trustee in the contemplation of the law, unlike an ordinary trustee, a county must bear its expenses to administer the constitutional trust under article VII, section 6. *See Club Land & Cattle Co.*, 66 S.W. at 297. Thus, the Act does not authorize a county to recoup its expenses as trustee under article VII, section 6.

In sum, a county and school districts in the county cannot "jointly develop" or sell rights to natural resources and mineral rights in county school land if such an arrangement means that the county would surrender its authority and responsibility as the sole trustee of the lands and the county permanent school fund. A county may not delegate its authority under article VII, section 6 either by sharing its constitutional authority with the school districts or by creating a separate corporation or association to exercise the county's authority. Furthermore, a county or school district may not recoup expenses to develop or sell natural resources and mineral rights from subsequent revenue. Finally, the county and the school districts in the county may not share in the revenue realized from the sale of natural resources and mineral rights in such land.

## S U M M A R Y

Article VII, section 6 of the Texas Constitution does not allow a county to cede or share its authority and responsibilities as sole trustee of county school land and the county permanent school fund. Thus, a county and school districts in the county may not "jointly" develop or sell rights to natural resources and minerals in county school land by forming a joint venture, a local government corporation, or other association to exercise the county's constitutional authority. A county or school district may not recoup expenses to develop or sell natural resources and mineral rights in county school land from subsequent proceeds or income from such land. The county and the school districts in the county may not share in the revenue realized from the sale of natural resources and mineral rights in such land.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ANDREW WEBER
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee