## HOUSTON E. & W. T. RY. CO. v. CHAMBERS. (No. 1454.)*

(Court of Civil Appeals of Texas. Beaumont. May 14, 1926. Rehearing Denied May 26, 1926.)

**1. Judgment ⬅⬆445 — Railroad cannot have judgment in favor of injured switchman set aside because obtained by his willfully false testimony as to extent of injuries, where such question was contested issue and railroad was not prevented from making full defense at trial.**

Railroad company *held* not entitled to have judgment against it in favor of injured switchman set aside on ground that it was obtained by his willfully false testimony as to extent of injuries, where such question was contested issue in trial and railroad did not allege it was misled, or prevented from making full defense.

**2. Appeal and error ⬅⬆1145 — Affirmance by Court of Appeals of trial court's order denying temporary writ of injunction dissolves injunction granted prior to consideration of case on appeal.**

Affirmance by Court of Appeals of trial court's order denying temporary writ of injunction, dissolves temporary injunction, granted prior to consideration of case on appeal, and hence motion to dismiss injunction will be denied.

Appeal from District Court, Angelina County; C. A. Hodges, Judge.

Suit for injunction by the Houston East &. West Texas Railway Company against S. Chambers. From order denying injunction, plaintiff appeals. Affirmed.

See, also, 279 S. W. 290.

Garrison & Watson and Baker, Botts, Parker & Garwood, all of Houston, for appellant.

Collins & Collins, of Lufkin, for appellee.

HIGHTOWER, C. J. The appellant, Houston East & West Texas Railway Company, prosecutes this appeal from an order of Hon. C. A. Hodges, judge of the Second judicial district of Texas, declining and refusing to grant to appellants temporary writ of injunction restraining and enjoining the appellee, S. Chambers, and his attorneys from collecting or attempting to collect, by levy of execution upon appellant's property or otherwise, a certain judgment that was recovered by Chambers against appellant in the district court of Angelina county, and which has become, in all respects, a final judgment.

The present controversy between the parties is based upon the following facts:

On June 15, 1924, the appellee, Chambers, was a switchman, in the employ of appellant in the town of Lufkin, in Angelina county, and on that day sustained personal injuries; and thereafter filed suit in the district court of Angelina county against appellant to recover damages in consequence of such injuries, alleging that they were caused by the negligence of appellant. Appellant, in that suit, answered by general demurrer and general denial, and pleaded contributory negligence and assumed risk on the part of Chambers. That cause proceeded to trial before a special trial judge without a jury, and resulted in a judgment in favor of Chambers, the plaintiff in that cause, for $31,000. After its motion for new trial in that cause was overruled, appellant appealed to this court, challenging the judgment of the trial court by a number of assignments of error, all of which were overruled by this court with the exception of the assignment which challenged the judgment on the ground that it was excessive, and that assignment this court sustained. This court held that the judgment was excessive by $11,000, and entered its order reversing and remanding that cause, unless the appellee would enter a remittitur of $11,000, in which event this court would affirm the judgment in his favor for $20,000. Appellee did, thereafter, in due time, enter a remittitur of $11,000 and this court affirmed the judgment in that cause in his favor for $20,000. The opinion of this court will be found reported in 279 S. W. at page 290. After the judgment of this court affirming the judgment in that cause, the appellant railway company applied for a writ of error to our Supreme Court, but the application was dismissed or denied by that court for want of jurisdiction.

On April 2, 1926, the appellant here, Houston East & West Texas Railway Company, filed an original suit or bill in equity against the appellee here, Chambers, in the district court of Angelina county to have set aside and annulled the judgment which appellee had obtained against appellant above mentioned, on the ground that that judgment was procured by fraud and perjury on the part of appellee, and that the court, in the exercise of its equitable powers, ought to cancel and set that judgment aside, and such relief was prayed for; and appellant further prayed for a temporary writ of injunction to restrain Chambers and his attorneys from collecting or attempting to collect the aforesaid judgment during the pendency of the suit to cancel and annul it. Appellant presented its petition and prayer for the temporary writ of injunction to Judge Hodges on the same day that the suit was filed, and Judge Hodges refused and declined to grant the temporary writ, and on the next day appellant, by supplemental petition presented to Judge Hodges, requested him to set the petition for the temporary writ of injunction down for hearing on the 5th or 6th day of April, 1926, in order to hear and determine whether appellant was entitled to the temporary writ as prayed, and this request was refused by Judge Hodges, and from both of these orders appellant has prosecuted this appeal.

---

⬅⬆For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction June 9, 1926.

In the present suit between the parties, in which appellant is seeking to have set aside and annulled the judgment in the former suit, appellant alleges, in substance, as the only ground for the equitable relief sought, that Chambers testified, while a witness on the stand, that the injuries for which he was seeking recovery against appellant were serious and permanent, and especially that the main injury claimed by him, that is the injury to his right arm, was serious and permanent, and that the use of his arm, in consequence of the injury, had been practically destroyed, whereas, in truth and in fact, so appellant alleges, the injuries sustained by Chambers were not serious and permanent, and the injuries to his right arm were so slight that he had practically recovered from them, and that his arm was practically normal. In this connection, appellant, in its petition to annul the former judgment, has set out at great length the testimony of Chambers on the former trial, showing the materiality of same as to the extent of his injuries, and especially the injury to his right arm, and this statement in the petition shows that Chambers, on the former trial, did testify, in substance, that the injuries sustained to his right arm had rendered the same practically useless, and that he could perform no character of manual labor with that arm. And then appellant proceeds, by allegations in the petition, to annul the former judgment, as follows:

"Plaintiff alleges that neither the doctors in Lufkin who had examined him and had been treating him (meaning Chambers) nor his wife testified in his suit; that he relied as to the extent of his injuries solely upon his own testimony.

"Plaintiff alleges that during the trial of said case the said S. Chambers was examined by two physicians for the railway company, to wit, Dr. Morrison of Houston, and Dr. Cannon of Lufkin; that each of these doctors testified that the injuries to his right arm would not exceed 50 per cent. of its normal condition, and that if he would try to use his arm that they were of the opinion, or at least Dr. Morrison was of the opinion, that he, Chambers, would eventually recover the entire normal use of his arm; that at the time the said S. Chambers testified as to the condition of his arm and his inability to use the same, as well as to the extent of his injuries, he knew that said testimony was false and untrue; that the physicians in making their reports relied largely in giving their opinion as to the extent of his injuries upon statements made by the said S. Chambers as to the use he could make of his arm and as to the amount of pain he experienced in using his arm; that the said S. Chambers knew at the time of making said statements that the same were false and untrue, and that the same were made solely for the purpose of increasing the amount of damages which might be awarded him by a court or jury; that the railway company was unable to disprove the facts as testified to by the said S. Chambers as to the use he could make of his right arm and the pain he experienced in using

same, for the reason that said facts were known only to the said Chambers; that the excessive and outrageous judgment of the trial court and the affirmance of said judgment by the Court of Civil Appeals was predicated upon the testimony of the said S. Chambers as to the extent of his injuries.

"Plaintiff alleges that it is reliably informed by creditable witnesses that a short time prior to the trial of said case the said S. Chambers was examined by a reputable physician in Lufkin; that said doctor made a careful examination of the plaintiff, especially with reference to his testimony as to his inability to use the right arm; that said examination was made not more than two weeks before the trial of said case; that the doctor put the said Chambers through a very careful test as to the use of his right arm for the purpose of determining definitely the extent of his injuries; that during said examination it was found that the said doctor could move the arm of Chambers in any direction in which he wanted to move it; that he could raise the arm straight up from his head, work the elbow joint and, in short, made a very thorough examination and advised Chambers and his attorney that Chambers' arm was not injured except for the scars, that all muscles, tendons, bones and other parts of the arm were normal and that the use of it was normal; that there was no injury except as to the appearance of the arm caused from the scars thereon; that these facts were made known to the said Chambers and were known to him at the time he testified that he could not use his arm and could not raise it higher than an angle of 45 degrees from his body, and that in so doing he suffered pain, and that he could not use his right arm for any purpose as hereinbefore alleged; that the doctor who had examined him a short time prior to the time the case was tried was not called upon to testify on behalf of the said Chambers for the reason that he had informed the said Chambers that the injuries to his right arm were not permanent and that he had entirely recovered.

"Plaintiff further alleges that since the trial of said case the said S. Chambers has been using his right arm, working in a store, selling merchandise; that he is able to do so and does crank his car with his right arm; that he has also been playing billiards or pool, using the cue in his right hand; and plaintiff is informed by reliable witnesses that they have seen the said Chambers using his right arm, apparently without difficulty, cranking his car and playing billiards.

"Plaintiff further alleges that immediately after the said case had been affirmed by the Court of Civil Appeals at Beaumont, after said court had required a remittitur to be filed, the said S. Chambers, on the streets in the town of Lufkin, in the presence of several witnesses, made a statement to the effect that he was not hurt but that he was going to get his money anyhow; that said statement conclusively shows that the said Chambers at the time he testified as to the extent of his injuries knew that he was testifying falsely; and plaintiff charges that the verdict of the trial court as well as the affirmance of said judgment by the Court of Civil Appeals was predicated upon false and fraudulent testimony, which fact was known to the said Chambers at the time he testified in said case.

"Plaintiff further alleges that the trial court in rendering the judgment in said case, as well as the Court of Civil Appeals in affirming said judgment, placed full faith and credit in the truthfulness of the statements made by the said Chambers as to the extent of his injuries; and plaintiff charges that said judgment thus awarded was obtained by false and fraudulent evidence upon the part of the said S. Chambers; that the above allegations are made upon information furnished to plaintiff's attorneys by credible witnesses; and plaintiff now charges that it can make proof of and establish the allegations herein made; that at the time of the trial of said cause and at the time final judgment was entered, plaintiff was not aware of the facts stated herein, and that knowledge of said facts was acquired by plaintiff after final judgment was entered; that the facts herein alleged as to the extent of the injuries to the arm of S. Chambers were unknown to the plaintiff at the time of the trial of said case and that plaintiff was then unable to controvert said facts for the reason that knowledge of such facts was obtained by plaintiff after final judgment was entered."

The prayer was as stated for temporary writ of injunction enjoining the enforcement of collection of the former judgment pending the suit, and for its cancellation upon final hearing.

It is appellant's contention before this court, in substance, that its petition to cancel and annul the former judgment obtained against it by appellee stated facts showing clearly that appellant is entitled to the equitable relief for which it prayed, in that its petition stated facts showing that the judgment against it in favor of appellee was obtained by willfully false testimony on his part as to the extent of his injuries, and that the district judge was in error in declining to grant the temporary writ enjoining the collection of that judgment until its suit to set it aside could be tried upon its merits. In other words, appellant's contention is, in substance, that, since its petition to annul the former judgment shows that the appellee testified falsely in the former suit as to the extent of his injuries, and thereby procured a judgment for a much greater amount than he would otherwise have procured, a court of equity has the power and it is its duty to set aside that judgment.

In support of its contention, appellant relies largely upon the decision in the case of McMurray v. McMurray, reported in 67 Tex. 665, 4 S. W. 357. The opinion in that case was written by one of the ablest jurists that has adorned the supreme bench of this state, and if this court felt that the decision in that case is in point upon the facts here presented, we would not hesitate to follow it in this instance, regardless of decisions that may be to the contrary in other jurisdictions. We have read Judge Stayton's opinion in the McMurray Case with great care, but have reached the conclusion that it is not authority for appellant's contention here. We shall not undertake to go into detail in a statement of the facts in the McMurray Case upon which that decision rests, but it will suffice to say that the underlying and controlling principle in it is that the husband of Mrs. McMurray perpetrated upon her a damnable fraud in procuring a judgment in a divorce suit filed by him against her by which he was awarded, in addition to a divorce, practically all of the community property in which she had, of course, an equal interest with him. At the time the decree was obtained, Mrs. McMurray was in the state of Louisiana, some thousand miles distant, and she alleged in her petition to annul the judgment as to her interest in the community property that she had gone to Louisiana to visit her mother, at the suggestion and with the consent of her husband, with no intimation from him that he expected to institute divorce proceedings against her, and that she was not aware of any such intention on his part until she was served with a notice in Louisiana that the suit for divorce had been filed, and that she then had no means and no way of coming from Louisiana to Texas to attend the trial, and, in substance, that she was practically helpless in the situation. She alleged that she did write a letter to an attorney to represent her, but that he had no knowledge of the amount and value of the community property owned by the spouses, and that Mrs. McMurray herself had no knowledge and no means of knowledge of the amount and value of such property, and that her husband had always kept her in absolute ignorance of the amount and value of the community property owned by them. Mrs. McMurray further alleged, in substance, that the community estate was worth in excess of $55,000, as she had ascertained at the time she filed the bill to set aside the former judgment, and that she had only been allowed about $1,800 worth of property in the divorce proceedings. She alleged that her husband, as a witness upon the stand in that case, was guilty of perjury in stating the amount and value of their community property and in stating that all the property on hand, with the exception of a small portion, was his separate property, and that it all together was not worth in excess of $20,000. Judge Stayton in that case reached the conclusion that Mrs. McMurray's petition to set aside the judgment in that case, in so far as it took from Mrs. McMurray her interest in the community property, showed a good cause of action, and that the demurrer to it should not have been sustained as was done. Judge Stayton emphasized the fact, and quoted from former decisions of the Supreme Court of this state, that at that time the husband had the sole management and control of community property, and that he was presumed to know the amount and value of such property, but that the wife was not, and that she must, neces-

sarily, rely almost entirely upon the husband's knowledge as to the amount and value of community property, and that, in fact, he was much in the position of a trustee for his wife as to their community property, and that it was his duty to deal fairly with her and to acquaint her of the amount and value of community property, and, in view of the fact that he breached that duty to her, with the fraudulent and wicked purpose of taking from her that which the law gave her when she was in no position to help herself, constituted such a case as required a court of equity to intercede in her behalf. That case was a very strong appeal to a court of equity, and this court feels at this day that upon the peculiar facts of that case Judge Stayton's decision was just and sound.

But here the facts are entirely different. Appellant, in the petition filed to set the former judgment aside, relies upon the ground only that Chambers testified falsely upon the trial as to the extent of his injuries, and that for that reason alone equity should intervene and set the judgment aside. There is no allegation in appellant's petition that it was deceived or tricked in any way by Chambers, or that it was prevented by any fraud perpetrated by him from presenting its side of the case. Indeed, the record in the former case, which was before this court, shows that there was a stubborn fight between Chambers and the railway company as to the extent of his injuries, as well as the alleged negligence on the part of appellant, and that issue was, therefore, one of the principal and direct issues of fact then before the court. It seems to be the rule, followed by the great weight of authority, that where any controverted matter of fact is made a direct issue upon the trial of a cause, and both parties have had their day in court and met the issue with their evidence, and one of them has lost, it is not open to him by suit thereafter filed in a court of equity to set aside and vacate the judgment against him on the ground that his adversary procured the judgment by false testimony, in the absence of a showing that he was prevented by his adversary from making a full presentation of his side of the case. Counsel for appellant have not cited any case, and we are aware of none, that holds that mere false and perjured testimony given by one litigant before the court as against his adversary has been held to be a sufficient reason in equity for setting aside the judgment where the party cast by the judgment was not prevented by some fraud practiced upon him from fully presenting his side of the case, and the judgment in such case has become final and the litigation between the parties closed.

One of the earliest and perhaps the leading case in the United States on the question as to whether perjury committed during the trial of a cause is a sufficient reason for vacating a judgment which has become final is the case of United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93. In that case Judge Miller, speaking for the court, said:

"That the mischief of retrying every case in which the judgment or decree rendered on false testimony, given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

Another leading case on the point here under consideration is that of Hilton v. Guyot, 159 U. S. 113, 16 S. Ct. 139, 40 L. Ed. 95. In that case the Supreme Court said:

"It has often, indeed, been declared by this court that the fraud which entitles a party to impeach the judgment of one of our own tribunals must be fraud extrinsic to the matter tried in the cause, and not merely consist in false and fraudulent documents or testimony submitted to that tribunal, and the truth of which was contested before it and passed upon by it."

Another case very much in point as to the principle here involved is that of Warne v. Jackson, 273 S. W. 315, an opinion by Chief Justice Fly of the San Antonio Court of Civil Appeals. The court said:

"The petition failed to state a cause of action, and a general demurrer was properly sustained. The voluminous pleading sets out in much detail the testimony of a number of witnesses who testified when the county court was considering the probate of the will, and denounces their testimony as false and perjured, but all of it was testimony legitimately before the county court, and its credibility and weight was duly considered by that tribunal. The fraud alleged was not extrinsic to the matter tried, but was purely intrinsic, and entered into the proceedings in the county court."

In that suit Judge Fly cited with approval Hilton v. Guyot, supra.

Another case which we consider very much in point on the facts with this case is that of Railroad Co. v. Mirrielees, by the Supreme Court of Missouri, 182 Mo. 126, 81 S. W. 437. In that case, a personal injury suit, the judgment in favor of the plaintiff was sought to be canceled and set aside because of perjured testimony given by the plaintiff upon the trial. The court, in disposing of the contention, said:

"It thus appears that the bill rests wholly and alone upon the theory that, the amount of the judgment in the suit for damages having been increased by the alleged false testimony of the plaintiff testifying as a witness, the defendant in that suit may now maintain its bill to set aside the judgment on the ground that it was obtained by 'fraud.' It will be observed that the bill contains no averment of any fraud whatever, extrinsic or collateral to the matters involved in the issues on trial in the suit in which the judgment now attacked was rendered. On the contrary, it affirmatively appears that the only 'fraud' propounded or suggested is this alleged false testimony given by the then plain-

tiff in the case. It appears on the face of the petition that such testimony was given on clearly defined issues then on trial, to wit, the nature and extent of plaintiff's injuries and his earning capacity before and after receiving said injuries. There is no allegation as to what diligence, if any, was exercised by the railroad company in preparing to meet these essential issues on the trial, nor that it was hindered or prevented by any act of the plaintiff in said suit from exercising such diligence. There is no averment of any artifice, trick, promise, or fraudulent conduct of the said plaintiff, whereby the company was in any manner deceived or lulled into security, or by any means prevented from obtaining testimony to rebut the said evidence of plaintiff. The bill nowhere sets out the newly discovered evidence, or the names of the witnesses by whom the same could be established, and entirely fails to show a valid defense to such action. * * *

"It is perfectly obvious there can be no distinction between introducing false and forged instruments in evidence and swearing falsely as a witness. Those two practices fall within the same category, whether in law or morals. In United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, Judge Miller very pithily expressed what we conceive to be the accepted doctrine on this subject in this state, as well as elsewhere: 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced upon him by his opponent, as by keeping him away from court on a false promise of compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these and similar cases which show that there has never been a real contest or trial in the hearing of the case are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and fair hearing. * * * In all these cases, and many others which have been examined, relief has been granted on the ground that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court.'"

Another case that this court considers very much in point on the question here under discussion is that of King v. King (Tex. Civ. App.) 279 S. W. 899, an opinion by the San Antonio Court of Civil Appeals, through Associate Justice Cobbs. We shall not quote from the opinion in that case because it is easily accessible to the bench and bar and will speak for itself.

[1] Now, stated concisely and in simple language, appellant has alleged, in substance, in its petition to set aside and annul the former judgment that that judgment was obtained by willfully false testimony on the part of the appellee as to the extent of his injuries, and appellant insists that in equity it is entitled to a retrial of the whole case because of a fraud that was perpetrated upon it by the appellee giving false testimony on the former trial. As said by the authorities above quoted from, the very matter that appellant would now relitigate with appellee was one of the direct and intrinsic matters involved in the former litigation, and appellant does not allege that it was misled in any way or that any artifice or trick was perpetrated by appellee that prevented it from making a full defense in the former litigation. To permit appellant, by a bill of review or suit in equity, to open up the former controversy between the parties with a view to setting aside that judgment, would establish a precedent, so far as this court could establish it, of permitting a losing party, after final judgment against him, to commence a new litigation with his adversary and try the whole controversy over again on the ground that his adversary had procured the judgment by perjured testimony. There could be no finality or end to litigation if such were the rule, and we are unwilling to announce it in this state. We have concluded that the district judge was correct in denying to appellant the temporary writ of injunction as he did, or at least that he did not abuse the sound discretion vested in him in denying such writ, and, therefore, the judgment has been ordered affirmed.

[2] The affirmance of the trial court's judgment will, of itself, have the effect to dissolve and set aside the original writ of injunction granted by this court on the 12th day of April, 1926, which enjoined appellee and his attorneys from further proceeding to collect the judgment in favor of the appellee, which appellant in this cause sought to set aside and annul, and therefore the motion filed in this court by appellee to dismiss and dissolve the temporary injunction granted by this court will be dismissed.